Patrick M. Flatley
United States Bankruptcy Judge
Dated: Tuesday, June 26, 2012 4:25:59 PM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JOHNNIE WAYNE WILSON and LINDA ) | Case No. 1:12-bk-00172 |
| LOU WILSON, ) | |
| ) | |
| Debtors. ) | Chapter 13 |
| ) | |

## MEMORANDUM OPINION

Pending before the court is a motion by Johnnie W. Wilson ("Debtor") to approve a reaffirmation agreement ("Reaffirmation Agreement") with CSC Logic. For the reasons stated herein, the court disapproves of the Reaffirmation Agreement.

## BACKGROUND

The Debtor and his wife, Linda L. Wilson, filed their joint chapter 7 bankruptcy petition on February 15, 2012. On that same date, the Debtor filed a statement of intention, seeking to reaffirm a debt secured by his 2001 Dodge Caravan ("Vehicle").[1] On March 19, 2012, the Debtor filed his Reaffirmation Agreement and a Motion for Approval of Reaffirmation Agreement. The Clerk set a reaffirmation hearing because his motion indicated that he was not represented by an attorney during the negotiation of the Reaffirmation Agreement. 11 U.S.C. §§ 524(c)(6)(A)-524(d); *see* 11 U.S.C. § 524(m).

Per the Reaffirmation Agreement, the Debtor reaffirms his obligation on the Vehicle to CSC Logic in the amount of $2,040.19, at a fixed annual percentage rate of 9.54%; the Vehicle was purchased for $7,398.37 and is valued at $1,217.00. The Reaffirmation Agreement proposes

---

[1] The meeting of creditors took place on April 11, 2012; on the same day, the chapter 7 trustee filed a report of no distribution.

13 monthly payments of $169.05. On the reaffirmation cover sheet, the Debtor states that his monthly income is $1,204, with monthly expenses of $1,362, which leaves a monthly deficit of $158.[2] In Part II, the Debtor explained that he can afford to make payments on the reaffirmed debt even with a monthly deficit because his "son helps . . . [him] make this payment." Although Part II of the agreement indicates that the Debtor was represented by counsel during the course of negotiating the agreement, Debtor's counsel did not certify in Part IV that the requirements of 11 U.S.C. § 524(c)(3) were met.

During the reaffirmation hearing on April 20, 2012, Debtor's counsel appeared and explicitly noted on the record that he did not approve of the Reaffirmation Agreement.[3] He urged this court, however, to permit a "ride-through" because the Debtor complied with the strictures of 11 U.S.C. §§ 524(c) and 521(a) and has "made the payments every time" on the Vehicle; he further emphasized that retention of the Vehicle was necessary for the Debtor to transport his wife to Morgantown, West Virginia for medical appointments.

## DISCUSSION

Subsections 524(c) and (d) allow a debtor to reaffirm a debt that would otherwise be dischargeable. These subsections are strictly applied in order to carry out their overarching purpose of ensuring debtors are well informed and willingly assent to the agreement. Section 524(c)(6)(A) dictates that a court determine at the discharge hearing whether the reaffirmation agreement is in the best interest of the debtor and whether such agreement imposes an undue hardship. A presumption of undue hardship arises under § 524(m) if the debtor's declaration indicates a budget that is insufficient to make payments on the reaffirmed debt. § 524(m) (stating that a reaffirmation agreement "shall be presumed" an undue hardship "if the debtor's

---

[2] Schedules I and J match the disclosures made in the Reaffirmation Agreement. The monthly income figure includes income from the Debtor's wife, Ms. Wilson, the joint debtor in this case. The Reaffirmation Agreement though is only between Mr. Wilson and CSC Logic.

[3] The court differentiates between Debtor and his counsel to illustrate that although the Debtor was not represented by counsel during the course of negotiating the Reaffirmation Agreement, Debtor's counsel attended the reaffirmation hearing to argue in the alternative: if the Motion for Approval of Reaffirmation Agreement was denied, the court should consider a "ride-through." It is not uncommon that attorneys find themselves in just such an awkward position. *See generally In re Husain*, 364 B.R. 211, 216 (Bankr. E.D. Va. 2007); Lisa A. Napoli, *Reaffirmation After the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005: Many Questions, Some Answers*, 81 Am. Bankr. L.J. 259, 271-72 (2007) ("BAPCPA has left debtor's counsel in a quandary as to what to do about the Attorney Certification.").

monthly income less the debtor's monthly expenses . . . is less than the schedule payments on the reaffirmed debt."). A debtor may rebut this presumption by submitting a written explanation to the court that specifies how additional funds will be obtained to comply with the terms of the proposed reaffirmation agreement. *Id.*; *see* Fed. R. Bankr. P. 4008(b).

Here, the presumption of undue hardship arises because the Debtor's income after expenses is insufficient to make the monthly payments as required by the proposed Reaffirmation Agreement. § 524(m). According to the Debtor's Schedules I and J and statement of income and expenses included in the Reaffirmation Agreement, his monthly expenses exceed his income by $158.00. The Debtor explained in Part II.C of the Reaffirmation Agreement that he can afford the payments on the reaffirmed debt because his son helps him make the payments. At the hearing on April 20, 2012, the Debtor said his son helps him make the payments because he mows his lawn. The Debtor, however, provided no evidence regarding the son's continuing ability to pay for his services. Without any further information, the court cannot discern whether this additional income will continue throughout the Reaffirmation Agreement payment period. *See In Re Callejas*, Case No. 08-13919-SSM, 2008 WL 4587901, at *1 (Bankr. E.D. Va. Oct. 10, 2008) (explaining that income from other sources may only constitute "additional sources of funds" under § 524(m) if the "court is satisfied that the other person is both motivated to provide the funds and financially capable of doing so."). Furthermore, the Debtor does not expect any additional income in the near future. The court finds that the Debtor failed to rebut the presumption of undue hardship; accordingly, the court disapproves of the Reaffirmation Agreement. *See* 5 *Collier on Bankruptcy* ¶ 524.04[2] (16th ed. 2012) ("When it is doubtful that a debtor can make the payments called for by the [reaffirmation] agreement, the agreement is normally disapproved.").

In the alternative, the Debtor argues that this court should permit him to retain the Vehicle and have it "pass-through" the bankruptcy case unaffected. The option the Debtor requests, commonly known as a "back door ride-through" or "pay and drive" in bankruptcy jargon, is an issue of first impression for this court; however, not novel to sister bankruptcy courts within the Fourth Circuit. This court agrees with the holdings of *In re Chim*, 381 B.R. 191 (Bankr. D. Md. 2008) and *In re Husain*, 364 B.R. 211 (Bankr. E.D. Va. 2007) that the back door

ride-through remains viable after BAPCPA for personal property.[4] The court declines to iterate their cogent discussions here. Thus, this court holds that where a debtor fully complies with the prescriptions of §§ 521(a) and 362(h),

> the automatic stay remains in place with respect to the . . . [personal property], the . . . [personal property] remains property of the estate, the debtor is not obligated to turn over possession of the . . . [personal property], and the lender may not exercise remedies as a result of a default under the *ipso facto* clause under the loan agreement.

*In re Chim*, 381 B.R. at 198.

The Debtor in this case fully performed his duties under §§ 521(a) and 362(h). The Debtor complied with § 521(a)(2)(A) by filing his statement of intention to reaffirm the Vehicle on February 15, 2012. § 521(a)(2)(A) (requiring debtor to file statement of intention within 30 days of filing of the petition or on or before the date of the meeting of the creditors, whichever is earlier). The Debtor also met the deadline of § 521(a)(2)(B) by entering into the Reaffirmation Agreement with CSC Logic on or around March 19, 2012. § 521(a)(2)(B) (mandating the debtor "perform his intention with respect to such property" under § 521(a)(2)(A) "within 30 days after the first day set for the meeting of creditors"). Because the Debtor timely filed a statement of intent to reaffirm the Vehicle and timely entered into the Reaffirmation Agreement, § 362(h) is not triggered.[5] § 362(h)(1) (providing that the automatic stay under § 362(a) terminates with respect to personal property if a chapter 7 debtor fails to file a timely statement of intention under § 521(a)(2)).

Notably, § 521(a)(6) is inapplicable because CSC Logic is not a holder of an "allowed claim"; CSC Logic did not file a proof of claim in this no asset case and therefore cannot assert a claim for the "purchase price" of the Vehicle. § 521(a)(6) (requiring creditor to hold "an allowed

---

[4] Other courts have similarly permitted a ride-through following denial of a reaffirmation agreement. *See, e.g.*, *In re Reed*, Case No. 10-67727, 2011 WL 6328677 (Bankr. E.D. Mich. Dec. 14, 2011); *In re Bower*, Case No. 07-60126-fra7, 2007 WL 2163472 (Bankr. D. Or. July 26, 2007); *In re Moustafi*, 371 B.R. 434 (Bankr. D. Ariz. 2007). The vitality of the back door ride-through post-BAPCPA remains an open question in this circuit. *See In re Jones*, 591 F.3d 308, 311 n.3 (4th Cir. 2010) ("Because Mr. Jones did not take any action to reaffirm or redeem, we have no occasion to address the 'back door ride-through' option some courts have recognized where the debtor has substantially complied with §§ 521(a)(2) and 362(h) but has been frustrated in his effort to fully comply.") (citations omitted).

[5] Section 362(h)(2) is not applicable in this case because there was no separate motion by the trustee seeking relief provided for therein.

claim for the purchase price" before a debtor is forced to surrender the underlying personal property); *see In re Blakeley*, 363 B.R. 225, 229 (Bankr. D. Utah 2007) (remarking that "[s]ection 521(a)(6) only applies if a creditor has an 'allowed claim'" and since the creditor did not file a proof of claim under § 501, there was no allowed claim under § 502).[6] Consequently, the Debtor has avoided the implications of § 521(d); namely, any *ipso facto* clause contained in the loan agreement becoming operative. § 521(d) ("If the debtor fails timely to take the action specified in . . . [§ 521(a)(6), § 362(h)(1), or § 362(h)(2)], with respect to property which . . . a creditor holds a security interest . . . , nothing in this title shall prevent or limit the operation" of an *ipso facto* clause in the underlying agreement).

## CONCLUSION

At the reaffirmation hearing, the Debtor said that he is current on Vehicle payments; the automatic stay and discharge injunction will continue provided that the Debtor remains current on his payments due under the Reaffirmation Agreement. *In re Hussain*, 364 B.R. at 219 ("Once the discharge is granted, the creditors may not repossess the vehicles without violating the discharge injunction unless there is a subsequent payment or insurance default."). CSC Logic may continue to accept payments under § 524(l)(1). *In re Stevens*, 365 B.R. 610, 612 (Bankr. E.D. Va. 2007). And because the Debtor has complied with §§ 521(a) and 362(h), CSC Logic cannot exercise the relief provisions of §§ 362(h), 521(a)(6), and 521(d). A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

---

[6] Even if § 521(a)(6) did apply in this case, the Debtor satisfied it by entering into a Reaffirmation Agreement with CSC Logic pursuant to § 524(c) within 45 days after the first meeting of creditors.